UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA M. ALSTON,

          Plaintiff,

v.

                     Case # 13-CV-6153-FPG

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,   DECISION & ORDER

          Defendant.
_____

## INTRODUCTION

Plaintiff Lisa M. Alston ("Plaintiff") brings this action pursuant to the Social Security Act ("SSA") seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), that denied her application for Supplemental Security Income benefits ("SSI"). 42 U.S.C. §§ 401-434. Both parties filed motions for judgment on the pleadings. Dkt. # 8, 9. Because I find that the Commissioner's decision is supported by substantial evidence, Defendant's Motion for Judgment on the Pleadings is granted, Plaintiff's Motion for Judgment on the Pleadings is denied, and the Complaint is dismissed.

## BACKGROUND

**A. Procedural Background**

Plaintiff protectively filed an application for SSI on March 24, 2010, was denied, and then timely requested a hearing before an Administrative Law Judge on June 7, 2010. R. at 63-64, 71-73.[1] The hearing occurred before Administrative Law Judge John P. Costello ("the ALJ") on August 23, 2011. R. at 13, 106, 128-29. Plaintiff appeared and testified while represented by an attorney. R. at 13. On September 19, 2011, the ALJ issued a written decision finding that Plaintiff was not disabled under the SSA and thus not entitled to benefits. R. at 10-22. Plaintiff

---

[1] The administrative record in this action is referred to as "R.___."

appealed to the Social Security Administration Appeals Council, which denied her appeal, making the ALJ's decision the final decision of the Commissioner. R. at 1-6, 9. Plaintiff then brought this action on March 22, 2013. Dkt. # 1.

**B. Non-medical Evidence**

Plaintiff graduated from high school in 1985 and is currently 46 years old. R. at 197, 203, 209. She worked as a housekeeper in 2001 and at two coffee establishments in 2005, but has not been employed since. R. at 34, 209, 255.

Knee pain began to affect Plaintiff's daily life in early February of 2010. R. at 208. According to Plaintiff, the pain can last all day or night, and is sharp and burning. R. at 236-37. It prevents her from walking long distances, dancing, cleaning, and going to special events. R. at 229. Plaintiff also has difficulty standing for long periods of time, walking up and down stairs, and bathing, since she cannot get out of the bathtub. R. at 229, 233-36.

Plaintiff testified that daily chores are also difficult for her. Plaintiff can neither perform yard work nor "bend down" to pick up the trash, but is able to cook twice a week and occasionally clean the house, with some difficulty. R. at 230-31.

Plaintiff's knee pain affects her travel and leisure time as well. She testified that she does not leave the house other than to attend doctor's appointments, and buy groceries once a month. *Id.* When she does leave, she travels with others, since she requires assistance to walk. *Id.* At home, Plaintiff "relax[es]," takes naps, watches television, talks on the phone, listens to music, and occasionally reads or gets on her computer. R. at 232-38.

Plaintiff further explained her knee pain to the ALJ at her hearing on August 23, 2011. She experiences sharp pain and a "lock[ing]" sensation both for a few seconds at a time. R. at 36, 49. She is able to stand for ten minutes, sit for thirty minutes, and walk five feet before she needs a break. R. at 38-39. Plaintiff is able to wash dishes, clean her bathroom, sweep, cook, do

laundry, and shop for groceries. R. at 46-47. The maximum weight Plaintiff can lift is ten pounds, although she was also able to lift a "heavy" mirror and "mov[e] things" when moving to a new apartment. R. at 41, 51-52. She has declined injections to lessen the pain, but will occasionally use a heating pad for half an hour at a time. R. at 37.

**C. Medical Evidence**

Plaintiff first complained of knee pain during a visit to Family Nurse Practitioner ("FNP") Sophie Dickinson on February 8, 2010. R. at 298. FNP Dickinson noted that Plaintiff had been experiencing chronic pain in both knees for several weeks. *Id.* Plaintiff described the pain as a five on a scale from one to ten, remarked that nothing improved the pain, and that moving or bending made it worse. *Id.* Her knee also felt unstable and would "lock up." *Id.*

Dr. Brian Tan administered an x-ray three days later and found that both knees were undergoing "mild arthritic change." R. at 305.

On February 22, 2010, Plaintiff complained to FNP Dickinson of continual, "intermittent" knee pain, but without swelling, locking or instability. *Id.* Plaintiff said she had not experienced pain in the last week when asked by a nurse. R. at 296.

Plaintiff did not present with knee issues again until May 17, 2010. R. at 291-294, 365. Plaintiff's treating physician, Dr. Bridgette Wiefling, noted that for three months, Plaintiff had experienced difficulty walking and a locking sensation that caused her to fall. R. at 365. Plaintiff again stated that she had not experienced pain in the last week. *Id.*

Dr. Harbinder Toor performed an exam as a consultative physician for the Social Security Administration on May 18, 2010. R. at 307. Dr. Toor observed that Plaintiff had experienced arthritis in both knees for "many years" and pain that was dull, achy, and occasionally sharp. *Id.* On a scale of one to ten, the pain was an eight and was more severe in her right knee than her left. *Id.* Plaintiff was able to cook, do laundry, and shower twice a week. *Id.* She shopped once

a week, dressed herself, watched television, listened to the radio, and engaged in light reading daily. *Id.*

In examining her general physical appearance, Dr. Toor noted that Plaintiff was "in no acute distress," had a normal stance, and a "slightly abnormal" gait. R. at 308. She walked with a limp toward the right side with her cane and declined to walk or squat without it. *Id.* She could stand only for a few minutes without her cane for fear of losing her balance and experiencing pain. *Id.* Getting out of her chair and onto the exam table were difficult, but changing for the exam was not. *Id.* The strength in her upper and lower extremities was "5/5." R. at 309. Dr. Toor found that Plaintiff had limited range of motion to 145 degrees with pain in her right knee and full range of motion with pain in her left knee. *Id.*

Dr. Toor concluded that Plaintiff's prognosis was "fair." R. at 310. She had a moderate to severe limitation in standing, walking, squatting, and lifting because of her pain, but only a moderate limitation to sitting for long periods of time. *Id.* Finally, Dr. Toor cautioned that Plaintiff should avoid heavy exertion. *Id.*

Plaintiff returned to FNP Dickinson on July 14, 2010, reporting that the pain in her right knee and its instability were getting worse. R. at 377. The pain was five on a scale of one to ten, sharp, and worse when walking. R. at 378. FNP Dickinson noted that Plaintiff was in no acute distress and was able to walk around and change position without difficulty. R. at 377.

Dr. Wiefling requested an MRI of the Plaintiff's right knee, which was performed on July 26, 2010. R. at 379. Dr. Raymond Tan read the MRI and found "reactive marrow edema," "osteoarthritic change," and "modest joint effusion." R. at 379-80.

Two days later, Plaintiff saw FNP Dickinson and said she was experiencing right knee pain, instability, and locking. R. at 381.

On December 10, 2010, Plaintiff saw Resident Taylor Buckley, M.D. who observed that Plaintiff's medical history included bilateral knee pain that was greater in the right knee than the left. R. at 453. She also had stiffness in her knees, difficulty walking, and particular difficulty traversing stairs and getting out of chairs. *Id.* Dr. Buckley wrote that Plaintiff "feels like the right knee occasionally gives out on her, although on further questioning, it appears that pain leads to instability." *Id.* Plaintiff found minimal relief through medication and physical therapy. *Id.* While noting that the knee was stable, Dr. Buckley analyzed Plaintiff's x-ray, MRI, and physical examination results, and determined that Plaintiff had mild degenerative joint disease. R. at 454.

Nurse Practitioner Cassandra Scott saw Plaintiff on April 12, 2011. Plaintiff had experienced increased right knee pain for one month. R. at 391. She described the knee pain as seven on a scale of one to ten, chronic, sharp, and achy. *Id.*

Dr. Wiefling completed a medical statement in regard to Plaintiff's SSI claim on May 9, 2011. She noted that Plaintiff was experiencing degenerative joint disease in both knees, as well as chronic pain and stiffness. R. at 331. The pain was moderate, but limited Plaintiff to working four hours a day, with the ability to sit or stand for two hours at a time. *Id.* She is able to lift ten pounds occasionally and five pounds frequently. *Id.* Although she should never bend or climb a ladder, she can occasionally stoop and balance. *Id.* Dr. Wiefling also advised against strenuous exercise, but suggested that some exercise would help the Plaintiff's condition. *Id.*

## DISCUSSION

### A. Standard of Review

This Court's review is not *de novo*, and the Court may only set aside the Commissioner's decision if it is not supported by "substantial evidence" or is the product of legal error. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (quoting *Schaal v. Apfel*, 134 F.3d 496,

501 (2d Cir. 1998)); *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)). Indeed, the SSA holds that a decision by the Commissioner is "conclusive" if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)) (internal quotation marks omitted).

The SSA defines disability as the inability to "engage in any substantial gainful activity" because of a physical or mental impairment that is medically determinable and can be expected to result in death or has lasted for twelve months. 42 U.S.C. § 423(d)(1)(A). A person is disabled if her physical or mental impairment is so severe that she can neither perform work done previously nor any other kind of substantial, gainful work in the national economy considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). ALJ's use a five-step, sequential process to determine whether or not an individual is disabled, which involves determining, (1) whether the claimant is currently employed, (2) whether her impairment is severe, (3) whether the impairment is listed and thus is a categorical disability, (4) whether the claimant can continue work performed in the past, and finally (5) whether there is another type of work the claimant can perform.[2] *Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)). The claimant bears the burden of proving her case at steps one through four; at step five, the burden shifts to the Commissioner to show there is work in the national economy that the claimant is able to perform. *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

---

[2] The list referenced in step three is found at 20 C.F.R. pt. 404, Subpart P, app. 1. R. at 16.

Plaintiff argues that the Court should reverse the Commissioner's decision because the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence and is the product of legal error, because the ALJ committed error in the assessing the Plaintiff's credibility, and because the vocational expert did not provide substantial evidence to support the denial. With the standards described above in mind, and for the reasons that follow, I find that the Commissioner's decision is supported by substantial evidence and is thus affirmed.

## B. Analysis

1. RFC Assessment

Plaintiff first argues that the ALJ's RFC assessment is improper because the ALJ committed legal error in not affording the treating physician's opinion controlling weight. Dkt. # 9. I disagree. A thorough review of the record shows that the ALJ properly declined to assign controlling weight to the treating physician's opinion.

In the disability evaluation process, it is the ALJ's role to determine the Plaintiff's RFC, which is defined as the most the Plaintiff can do in spite of her impairments. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1520). In making his RFC determination, an ALJ should consider all available evidence including, but not limited to, the Plaintiff's statements, the treating physician's findings, and the findings of other, non-treating physicians. 20 C.F.R. § 404.1529(c)(1). Any evidence that is gathered is weighed against the record to determine its veracity. 20 C.F.R. § 404.1529(c)(4).

A treating physician's opinion is given controlling weight as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(c)(2)).

In this case, the ALJ concluded that the opinion of Dr. Wiefling, Plaintiff's treating physician, was "not given great weight" because it was not supported either by Plaintiff's treatment records or her testimony regarding her activities of daily living. R. at 17.

The reasons the ALJ gave for his decision could certainly have been more detailed. However, a thorough review of the record reveals substantial evidence to support the ALJ's decision. First, Dr. Wiefling alleges that Plaintiff is only able to work for four hours per day (R. at 331), which is not supported either by the Plaintiff's own testimony, the treatment notes of Dr. Wiefling, or the notes of other providers that examined the Plaintiff. During her hearing before the ALJ, Plaintiff related that she is able to accomplish a range of daily activities that require various levels of physical and mental exertion: she is able to cook, wash dishes, do laundry, sweep the floor, clean the bathroom, shop for groceries, and read magazines. R. at 46-48. Moreover, the treatment notes of Dr. Wiefling and other providers consistently refer to Plaintiff's knee issues as "mild" or "moderate." R. at 298, 305, 310, 331, 378, 454. Multiple providers observed that Plaintiff was "in no acute distress" (R. at 308, 377) and FNP Dickinson indicated that Plaintiff was able to walk around and change position without difficulty. R. at 377. Plaintiff twice related that she had not experienced pain in the last week despite discussing knee issues with providers. R. at 296, 365. Simply put, Dr. Wiefling's medical statement is the only document in the record that mentions such a limitation. R. at 331.

Additionally, Dr. Wiefling's conclusion that the Plaintiff can occasionally lift a maximum of ten pounds belies Plaintiff's testimony and the record. *Id.* In her hearing, Plaintiff divulged that she was able to lift a "heavy" mirror and helped "mov[e] things" when transferring to a new apartment. R. at 51-52. Dr. Toor noted in his examination that Plaintiff's strength in her upper and lower extremities was "5/5." R. at 309. Accordingly, the ALJ properly declined

to give Dr. Wiefling controlling weight as her conclusions are inconsistent with substantial evidence in the record.

Plaintiff next contends that the ALJ committed legal error in affording any weight to the opinion of the State disability examiner S. Kosick ("Kosick"). Dkt. # 9. Again, I cannot agree. Kosick's opinion is nearly identical to that of Dr. Toor and thus is supported both by a physician's opinion and substantial evidence in the record.

It is error to afford a disability analyst's opinion weight in the same manner as that of a doctor. *See Emerson v. Comm'r of Soc. Sec.*, No. 12 Civ. 6451, 2014 WL 1265918, at *16 (S.D.N.Y. Mar. 27, 2014); *Castano v. Astrue*, 650 F. Supp. 2d 270, 281 (E.D.N.Y. 2009) ("Treating a disability analyst as a doctor can be a fundamental error."). However, if a State disability examiner's opinion is supported by the opinion of physicians or substantial evidence in the record, it is not error to assign it weight. *Emerson*, 2014 WL 1265918, at *16.

Kosick's analysis closely tracks both Dr. Toor's evaluation and substantial evidence in the record. R. at 307-310, 314-17. Among other similarities, both Kosick and Dr. Toor explained that Plaintiff's gait is slightly abnormal, limping to the right side, that the Plaintiff had a range of motion in her right knee to 145 degrees with pain, and that Plaintiff had "strength 5/5" in the upper and lower extremities. *Id.* Kosick also describes the "mild arthritic change" in Plaintiff's knee seen by Dr. Tan and Dr. Buckley (R. at 305, 454), the intermittent knee pain without swelling, locking, or instability observed by Dr. Wiefling (R. at 296), and the Plaintiff's ability to cook twice a week, do laundry, and shop for groceries mentioned by the Plaintiff herself. (R. at 46-47, 230-31).

2. Credibility Assessment

Plaintiff further argues that the ALJ committed legal error by making his assessment of her credibility in comparison to the RFC finding.[3] Dkt. # 9. This argument has been consistently rejected by this Court and others within the Second Circuit when the ALJ considers a claimant's testimony in the context of the entire record, as he did here. *See Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 318 (W.D.N.Y. 2013); *Luther v. Colvin*, No. 12–CV–6466, 2013 WL 3816540, at *7-*8 (W.D.N.Y. July 22, 2013) (holding that the credibility assessment was proper where the ALJ found claimant's alleged symptoms "inconsistent with the above residual functional capacity" and where ALJ's finding was consistent with the entire record); *Cruz v. Astrue*, 941 F. Supp. 2d 483, 499 (S.D.N.Y. 2013) (ALJ decision proper despite reference to RFC finding); *Briscoe v. Astrue*, 892 F. Supp. 2d 567, 585 (S.D.N.Y. 2012) ("Read in context, however, this statement does not indicate that the RFC assessment was a basis for a finding of lack of credibility."). The ALJ in this case clearly considered Plaintiff's testimony regarding her daily activities and the medical records describing her knee condition. R. at 16-17. Therefore, there is no error in the ALJ's credibility assessment.

3. Vocational Expert Testimony

Finally, Plaintiff disputes that the vocational expert's testimony provides substantial evidence to support the denial, since the hypothetical question provided by the ALJ was based on an RFC that was not supported by substantial evidence. Dkt. # 9. However, where the RFC is supported by substantial evidence, and the hypothetical question provided to the vocational expert is based upon a proper RFC, the vocational expert's testimony supports the denial. *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983). As discussed above, the RFC is

---

[3] Plaintiff also claims that the ALJ "misstated facts" in making his credibility assessment. Dkt. # 9. However, in support of Plaintiff's contention, she cites sections of the transcript of the hearing before the ALJ, which were statements made by the Plaintiff herself. *Id.* Consequently, Plaintiff's argument is without merit.

indeed supported by substantial evidence, and as a result I find the vocational expert's testimony properly supports the denial.

## CONCLUSION

For the reasons set forth above, I find that the Commissioner's decision to deny Plaintiff's claim for SSI is supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed, Defendant's Motion for Judgment on the Pleadings is GRANTED (Dkt. # 8), Plaintiff's Motion for Judgment on the Pleadings is DENIED (Dkt. # 9), and the Complaint is dismissed. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATED: Rochester, New York
July 22, 2014

HON. FRANK P. GERACI, JR.
United States District Judge